**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TV TOKYO CORPORATION,<br><br>     Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON AMENDED SCHEDULE A HERETO,<br><br>     Defendants. | Case No. 25-cv-1701<br><br>Judge Jorge L. Alonso |

**AMENDED COMPLAINT**

Plaintiff, TV TOKYO CORPORATION ("Plaintiff" or "TV TOKYO"), by undersigned counsel, hereby complains of the Partnerships and Unincorporated Associations identified in Amended Schedule A attached hereto (collectively, "Defendants"), and hereby allege as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq.; 28 U.S.C. § 1338(a) - (b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant the Online Marketplace Accounts identified in Amended Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products including bearing counterfeit versions of Plaintiff's NARUTO Trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3.      This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products").

4.      Defendants created numerous Internet Stores and designed them to appear to be selling genuine products licensed by Plaintiff ("Plaintiff's products"), while selling inferior imitations of Plaintiff's products. Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence or series of transactions or occurrences. Defendants attempt to avoid

2

liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered trademarks as well as to protect unknowing consumers from purchasing unauthorized products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

5.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

### THE PLAINTIFF

6.      Plaintiff TV TOKYO is a leading Japanese content producer and broadcaster of movies, videos and games with particular strength in animation and is headquartered at Roppongi Grand Tower, 3-2-1 Roppongi, Minato-ku, Tokyo 106-8001 Japan.

7.      Plaintiff owns rights to and manages the licensing, sale and marketing of Naruto Products and is in the business of developing, marketing, selling, distributing and licensing NARUTO branded products. NARUTO is one of the best-selling Japanese manga series in history, written and illustrated by Masashi Kishimoto. Plaintiff TV TOKYO co-produced and distributes the NARUTO manga series. Two hundred fifty (250) million copies have been circulated worldwide in 46 countries and regions. English translations of the NARUTO manga series have consistently appeared on the USA Today and The New York Times bestseller lists.

3

The NARUTO brand of products, distributed and licensed by Plaintiff TV TOKYO, has expanded beyond the manga series to a variety of other media, including animated television shows, feature films, novels, comic books, toys and apparel. Plaintiff, through its duly authorized licensees, is the official source of NARUTO products.

8. Plaintiff licenses the use of U.S. Trademark Registration Nos. 3,229,574; 3,280,366 and 3,726,754 for the "NARUTO" word mark in international classes 9, 16, 25, 28 and 41 (collectively, the "NARUTO Trademarks"). Plaintiff is the owner of U.S. Copyright Registration Nos. PA0002277887, PA0002276002, and PA0002431062 (collectively, the "NARUTO Copyrights").

9. These Trademark and Copyright registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark and copyright registration certificates are attached hereto as Group Exhibits 1 and 2, respectively.

10. The NARUTO Trademarks are distinctive and identify merchandise as goods from Plaintiff or its duly authorized licensees.

11. The NARUTO Trademarks have been continuously used and never abandoned.

12. Plaintiff's NARUTO Trademarks are exclusive to Plaintiff and are displayed extensively on Plaintiff's Products and in Plaintiff's marketing and promotional materials. Plaintiff's NARUTO Trademarks have been the subject of substantial and continuous marketing and promotion by Plaintiff at great expense. In fact, Plaintiff has expended significant resources annually in advertising, promoting and marketing featuring Plaintiff's NARUTO Trademarks. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, a website, social media sites and point of sale materials. Because of these and other factors, Plaintiff's NARUTO Trademarks have become famous worldwide.

4

13.     Plaintiff's NARUTO Trademarks are distinctive when applied to Plaintiff's products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its Trademarks are manufactured to the highest quality standards. Plaintiff's NARUTO Trademarks have achieved fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with Plaintiff's NARUTO Trademarks is incalculable and of inestimable value to Plaintiff.

14.     Plaintiff's NARUTO Trademarks qualify as famous marks as used in 15 U.S.C. §1125 (c)(1) and have been continuously used and never abandoned.

15.     Plaintiff has expended substantial time, money and other resources in developing, advertising and otherwise promoting its Trademarks. As a result, products bearing the NARUTO Trademarks are widely recognized and exclusively associated by consumers, the public and the trade as being products sourced from Plaintiff.

| Legitimate Product | Infringing Product |
| --- | --- |
| | |

5



## THE DEFENDANTS

16.     Defendants are individuals and business entities who, upon information and belief, primarily reside in the People's Republic of China or other foreign jurisdictions.

Defendants conduct business throughout the United States, including Illinois and within this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendants' Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products to consumers within the United States, including Illinois and this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

17. The success of Plaintiff's brand has resulted in its counterfeiting. Plaintiff has identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms such as iOffer, PayPal and Amazon, including the Defendants' Internet Stores, which were offering for sale, selling, and importing counterfeit products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendants' Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in 2021 was over $3.3 billion, up from $1.3 billion in 2020. According to a 2021 study on the impact of the sale of fraudulent goods entitled "The Counterfeit Silk Road - Impact of Counterfeit Consumer Products Smuggled into the United States" (the 2021 study), Internet websites like the Defendant Internet Stores are also estimated to contribute to over 653,000 lost jobs for legitimate businesses and broader economic damages such as lost wages in an amount over $36 billion and a loss of federal and state tax revenue of over $13.5 billion every year.

18.     Upon information and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine products.   Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and PayPal and Amazon.   Defendants' Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard® and PayPal® logos.

19.     Plaintiff has not licensed nor authorized Defendants to use its Trademarks and none of the Defendants are authorized retailers of its genuine products.

20.     Upon information and belief, Defendants deceive unknowing consumers by using the Plaintiff's NARUTO Trademarks without authorization within the content, text, and/or meta tags of its websites to attract various search engines looking for websites relevant to consumer searches for Plaintiff's products.   Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendants' Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for Plaintiff's genuine products.   Further, Defendants utilize similar illegitimate SEO tactics to propel new online marketplace accounts to the top of search results after others are shut down.

21.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Internet Stores.   For

example, many of Defendants' names and physical addresses used to register the online marketplace accounts are incomplete, contain randomly typed letters or fail to include cities or states. Other online marketplace accounts use privacy services that conceal the owners' identity and contact information. Upon information and belief, some of the tactics used by the Defendants to conceal their identities and the scope and interworking of their counterfeit operations to avoid being shut down include regularly creating new websites and online marketplace accounts on various platforms using the identities listed in Amended Schedule A to the Amended Complaint, as well as other fictitious names and addresses.

22.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores. For example, some of the Defendants' websites have identical layouts, even though different aliases were used to register the respective online marketplace accounts. In addition, the counterfeit products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit products were manufactured by a common source and that Defendants are interrelated. The Defendants' Internet Stores also include other notable common features, including use of the same online marketplace account registration patterns, unique shopping cart platforms, similar payment and check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers and the use of the same text and images.

23.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, when counterfeiters like Defendants receive

notice of a lawsuit they will often register new online marketplace accounts under new aliases and move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters will also ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. The 2021 study indicated that the Internet has fueled explosive growth in the number of small packages of counterfeit goods shipped through the mail and express carriers. This growth closely correlates to the growth of the ecommerce industry which now make up 15.4% of all retail transactions as reported by the Census Bureau of the U.S. Department of Commerce.

24.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant and PayPal and Amazon accounts behind layers of payment gateways so that they can continue to operate in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal and Amazon accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal and Amazon transaction logs from prior similar cases indicate that offshore counterfeiters regularly move funds from U.S.-based PayPal and Amazon accounts to China-based bank accounts outside the jurisdiction of this Court.

25.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation and potential new lawsuits.

26.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use Plaintiff's NARUTO Trademarks in connection with the

advertisement, distribution, offering for sale and sale of counterfeit products into the United States and Illinois over the Internet. Each Defendants' Internet Stores offer shipping to the United States, including Illinois and, on information and belief, each Defendant has offered to sell counterfeit products into the United States, including Illinois.

27. Defendants' use of Plaintiff's NARUTO Trademarks in connection with the advertising, distribution, offering for sale and sale of counterfeit products, including the sale of counterfeit products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

28. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-27 of this Amended Complaint.

29. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of Plaintiff's Trademarks in connection with the sale, offering for sale, distribution and/or advertising of infringing goods. Plaintiff's NARUTO Trademarks are highly distinctive. Consumers have come to expect the highest quality from Plaintiff's products provided under its Trademarks.

30. Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products in connection with Plaintiff's NARUTO Trademarks without Plaintiff's permission.

31. Plaintiff TV TOKYO licenses the use of the NARUTO Trademarks (Exhibit 1). The United States Registrations for Plaintiff's NARUTO Trademarks are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in their

Trademarks and are willfully infringing and intentionally using Plaintiff's NARUTO Trademarks on counterfeit products. Defendants' willful, intentional, and unauthorized use of Plaintiff's NARUTO Trademarks are likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit products among the general public.

32. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

33. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell and sale of counterfeit Plaintiff's products.

34. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of its well-known Trademarks.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

35. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-34 of this Amended Complaint.

36. Defendants' promotion, marketing, offering for sale and sale of counterfeit products have created and are creating a likelihood of confusion, mistake and deception among the general public as to the affiliation, connection or association with Plaintiff or the origin, sponsorship or approval of Defendants' counterfeit products by Plaintiff.

37. By using Plaintiff's NARUTO Trademarks in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products.

38. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit products to the general public under 15 U.S.C. §§ 1114, 1125.

39. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**COUNT III**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))**

40. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-39 of this Amended Complaint.

41. Plaintiff's products have significant value and have been produced and created at considerable expense.

42. Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted products, including derivative works. Plaintiff's works are the subject of valid Certificate of Copyright Registrations issued by the Register of Copyrights. (Group Exhibit 2). The copyrighted works include copyright notices advising the viewer that Plaintiff's products are protected by the Copyright Laws.

43. Upon information and belief, Defendants had access to the works through Plaintiff's normal business activities. After accessing Plaintiff's works, Defendants wrongfully created copies of the copyrighted products without Plaintiff's consent and engaged in acts of widespread infringement.

13

44.     Plaintiff is informed and upon belief thereon alleges that Defendants further infringed Plaintiff's Copyrights by making or causing to be made derivative works from Plaintiff's products by producing and distributing reproductions without Plaintiff's permission.

45.     Plaintiff's products include a copyright notice advising the general public that Plaintiff's products are protected by Copyright Laws.

46.     Defendants, without the permission or consent of Plaintiff, have, and continue to sell online infringing outright copies and derivative works of Plaintiff's copyrighted products. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.).

47.     As a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted products. Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of Plaintiff's products.

48.     The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

49.     As a result of Defendants infringement of Plaintiff's exclusive rights under its Copyrights, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504 and to its attorneys' fees and costs pursuant to 17 U.S.C. §505.

50.     The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury that cannot be compensated fully or monetized. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503,

Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright and ordering Defendants to destroy all unauthorized copies. Defendants' copies, plates, and other embodiment of Plaintiff's products from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff, under 17 U.S.C. §503.

**COUNT IV**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510/1, et seq.)**

51. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-50 of this Amended Complaint.

52. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit products as those of Plaintiff, causing likelihood of confusion and/or misunderstanding as to the source of its goods, causing likelihood of confusion and/or misunderstanding as to an affiliation, connection or association with genuine products, representing that their products have Plaintiff's approval when they do not and engaging in other conduct which creates likelihood of confusion or misunderstanding among the public.

53. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq.

54. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  using the NARUTO Trademarks and Copyrights or any reproductions, counterfeit copies, derivatives, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine NARUTO product or is not authorized by Plaintiff to be sold in connection with the NARUTO Trademarks and Copyrights;

    b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine NARUTO product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under its Trademarks;

    c.  committing any acts calculated to cause consumers to believe that Defendants' counterfeit products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d.  further infringing Plaintiff's NARUTO Trademarks and Copyrights  and damaging Plaintiff's reputation and goodwill;

    e.  otherwise competing unfairly with Plaintiff in any manner;

    f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale including Plaintiff's NARUTO Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof; and

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts or any online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit products;

2)  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through f, above;

3)  Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer, PayPal and Amazon, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, and web hosts for the Defendants' Online Marketplace Accounts, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit products using Plaintiff's NARUTO Trademarks and Copyrights including any accounts associated with the Defendants listed in Amended Schedule A; and

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit products using Plaintiff's NARUTO Trademarks and Copyrights ;

c.  take all steps necessary to prevent links to the Defendant Internet Stores identified in Amended Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index;

4)   That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's NARUTO Trademarks are increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5)      In the alternative, Plaintiff is awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of their Trademarks;

6)      That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged as provided by 17 U.S.C. § 504(b);

7)      In the alternative, that Plaintiff be awarded statutory damages pursuant to 17 U.S.C. § 504(c) of not less than $200 and not more than $150,000 for each and every use of the NARUTO Copyrights;

8)   That Plaintiff is awarded its reasonable attorneys' fees and costs; and

9)   Award any and all other relief that this Court deems just and proper.


Dated: May 7, 2025                    Respectfully submitted,


By:      */s/ Michael A. Hierl*
         Michael A. Hierl (Bar No. 3128021)
         William B. Kalbac (Bar No. 6301771)
         Robert P. McMurray (Bar No. 6324332)
         John Wilson (Bar No. 6341294)
         Hughes Socol Piers Resnick & Dym, Ltd.
         Three First National Plaza
         70 W. Madison Street, Suite 4000
         Chicago, Illinois 60602
         (312) 580-0100 Telephone
         mhierl@hsplegal.com
         Attorneys for Plaintiff
         TV TOKYO CORPORATION

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing

Amended Complaint was filed electronically with the Clerk of the Court and served on all

counsel of record and interested parties via the CM/ECF system on May 7, 2025.


    s/Michael A. Hierl